WK:VAZ
F. #2021R00472

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ELECTRONICALLY STORED INFORMATION THAT IS ASSOCIATED WITH CALL NUMBER (929) 407-8444 AND IS IN THE CUSTODY OR CONTROL OF T-MOBILE US, INC. | APPLICATION FOR A SEARCH WARRANT FOR HISTORICAL CELL SITE INFORMATION<br><br>Case No. 21-MJ-1235 |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, TYLER MICELI, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for electronically stored information ("ESI") that is associated with a certain cellular device assigned call number (929) 407-8444 and used by Yinka Olaniyi (the "DEVICE"), and that is in the custody or control of T-Mobile US, Inc. ("T-Mobile"), a wireless communications service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054. As a provider of wireless communications service, T-Mobile is a provider of an electronic communications service, as defined by Title 18, United States Code, Section 2510(15).

2. The DEVICE and information associated with it are described in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) and Rule 41 of the Federal Rules of Criminal Procedure to require T-Mobile to disclose to the government the ESI described in Attachment B. Upon receipt of the ESI, government-authorized persons will review the ESI to locate items described in Attachment B.

3. I have been a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") for more than six years. Accordingly, I am a "federal law enforcement officer" within the meaning of Rule 41(a)(2)(C)—that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request such a warrant.

4. I have been involved in the investigation of numerous cases involving firearms offenses. I am responsible for conducting and assisting in investigations into the activities of individuals and criminal groups responsible for violent crimes, including armed robberies.

5. I am familiar with the facts and circumstances set forth below from my participation in the investigation described below; from my review of the investigative file (including records of the New York City Police Department ("NYPD") and recovered video-surveillance footage that captures many of the events described below); and from reports of other law enforcement agents involved in the investigation.

6. Because I am submitting this affidavit for the limited purpose of establishing probable cause, it does not include all the facts I have learned during my investigation.

7. Unless specifically indicated, I report in this affidavit only in substance and part the contents of documents and the actions, statements, and conversations of others.

8. Based on the facts set forth in this affidavit, there is probable cause to believe that Olaniyi, who uses the DEVICE, committed violations of 18 U.S.C. §§ 1951(a) (Hobbs Act robbery and attempted Hobbs Act robbery) and 924(c)(1)(A) (possessing and brandishing a firearm during a crime of violence). There is also probable cause to search the

DEVICE, as described in Attachment A, for evidence, instrumentalities and fruits of these crimes as further described in Attachment B.

9. The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. See 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

10. ATF and NYPD are conducting a criminal investigation of Yinka Olaniyi in connection with a series of armed robberies and an attempted armed robbery of neighborhood convenience stores in Brooklyn and Queens, New York between February 2021 and June 2021. Based on video surveillance footage and other record evidence, there is probable cause to believe that the robberies were all committed by the same individual: Olaniyi.

11. Moreover, because there is probable cause to believe that Olaniyi was carrying the DEVICE as he committed the crimes, there is accordingly probable cause to believe that location-based ESI related to the DEVICE constitutes evidence of at least three of those robberies. The three relevant robberies are described below.

I. May 23, 2021, Armed Robbery

12. On May 23, 2021, at approximately 10:30 p.m., an individual with same build as Olaniyi (the "Individual") robbed at gunpoint a delicatessen and convenience store located at 735 Knickerbocker Avenue, Brooklyn, NY 11237. Video surveillance footage showed that the Individual was wearing all black.

13. The Individual brandished what appeared to be a black semi-automatic handgun. Victim-1, who worked at the store and whose identity is known to me, reported that

3

the Individual directed Victim-1 to "give me your money." The Individual stole $120 from the cash register and fled.

14. As the Individual grabbed the money, a large circular tattoo covering the back of his left hand was captured on the deli's surveillance camera. I have reviewed at least one photograph of Olaniyi posted on one of his social media accounts, I have seen him in person, and the tattoo on the back of his left hand visible in these contexts matches the tattoo visible on the video surveillance footage.

15. Video surveillance footage from two cameras on the block where the premises known and described as 1402 Jefferson Avenue, Third Floor, Apt. 3B, Brooklyn, New York 11237 (the "Olaniyi Premises")[1] are located showed that, at approximately 10:46 p.m. on May 23, 2021, a person who appears to be the Individual was leaving the Olaniyi Premises. At approximately 10:53 p.m. that day, the same person appeared to enter the Olaniyi Premises. (When NYPD recovered footage from these cameras, it was determined that the timestamp for the footage was 43 minutes too slow. For example, the video footage reported the times above as approximately 10:03 p.m. and 10:10 p.m.)

II.  May 29, 2021, Attempted Armed Robbery

16. On May 29, 2021, at approximately 7:30 p.m., a person who appears to be the Individual attempted to rob at gunpoint the same 735 Knickerbocker Avenue store he had

---

[1] During a post-arrest interview, Olaniyi voluntarily told law enforcement agents that he lived at the Olaniyi Premises. On June 17, 2021, the Honorable James R. Cho, United States Magistrate Judge, issued a search warrant, docketed under Case Number 21-MJ-711, authorizing the search of the Olaniyi Premises to recover evidence of the violations of certain crimes associated with the commission of the three robberies described in this affidavit, as well as other robberies. Law enforcement agents executed the search warrant on June 29, 2021, and recovered from the Olaniyi Premises pieces of clothing that constituted evidence of the crimes identified in that warrant.

previously robbed at gunpoint on May 23, 2021. Video surveillance footage showed that the Individual wore all black, including black pants with a light-colored splatter-paint decal and a black sweater with a square light-colored design in front.

17.  Video surveillance footage showed that the Individual had a large circular tattoo on the back of his left hand. The tattoo has the same appearance as the one seen in the May 23, 2021, footage.

18.  The Individual brandished a black firearm at Victim-2, who worked in the store and whose identity is known to me. Victim-2 reported that the Individual directed Victim-2 to "give me your money." The robbery attempted was thwarted when Victim-3, who was also in the store and whose identity is known to me, chased the Individual out the door, causing the Individual to flee.

19.  Video surveillance footage from the two above-referenced cameras on the block where the Olaniyi Premises are located shows that at approximately 7:52 p.m. on May 29, 2021, a person who appears to be the Individual left the Olaniyi Premises while wearing the black pants with the light-colored splatter-paint decal. Video surveillance footage from the one of those cameras show that at approximately 7:59 p.m. that day, a person who appears to be the Individual was walking toward the Olaniyi Premises while wearing those pants and the sweater with the square light-colored design. (When NYPD recovered footage from this camera, it was determined that the timestamp for the footage was 43 minutes too slow. For example, the video footage reported the times above as approximately 7:09 p.m. and 7:16 p.m.)

III.  June 3, 2021, Armed Robbery

20.  On June 3, 2021, shortly before 5:00 p.m., a person who appears to be the Individual robbed at gunpoint a delicatessen located at 969 Seneca Avenue, Ridgewood, New

York 11385.  Video surveillance footage showed that the Individual wore all black.  The Individual's sweater appeared to be same one worn in the May 23, 2021, robbery, and the Individual's pants appeared to be the same pair worn in the May 29, 2021, attempted robbery.

21. The Individual brandished what appeared to be a nine-millimeter caliber handgun.  Victim-4 reported that the Individual directed Victim-4, who worked there and whose identity is known to me, to "give me all the money before I blow your head off."  Video surveillance footage from the store showed that the Individual racked the slide of a firearm.  The Individual stole $300 from the cash register and fled.

22. Video surveillance footage from two cameras on the block where the Olaniyi Premises are located showed that, at approximately 4:05 p.m. on June 3, 2021, a person who appears to be the Individual left the Olaniyi Premises while wearing the black sweater and pants with splatter-paint decal described above.  Video surveillance footage from one of those cameras showed that, at approximately 4:27 p.m., the person was jogging toward the Olaniyi Premises.

23. Video surveillance footage from an NYPD street camera located at Weirfield Street and Irving Avenue—about two and a half blocks from the Olaniyi Premises and along the way from 969 Seneca Avenue and the Olaniyi Premises—showed that, at approximately 5:09 p.m., a person who appears to be the Individual was walking in the direction of the Olaniyi Premises.

IV.     Confession

24. On June 13, 2021, Olaniyi called 911 and confessed, during the call, that he robbed a store.  When NYPD later arrived to pick up Olaniyi, he again stated, in sum and substance, that he committed a robbery.

25. NYPD brought Olaniyi to a local precinct, where he was informed of and orally waived his Miranda rights. Olaniyi gave voluntary statements in an interview with ATF and NYPD.

26. Olaniyi admitted, in sum and substance, that he has robbed multiple stores. Olaniyi was presented with still photographs of the Individual from video surveillance footage for the three completed or attempted robberies described above:

    a. When he was presented with still photographs from the May 23, 2021, robbery, Olaniyi identified the Individual as himself because of the hand tattoo.

    b. When he was presented with a still photograph from the May 29, 2021, attempted robbery, Olaniyi identified the Individual as himself.

    c. When he was presented with a still photograph from the June 3, 2021, robbery, Olaniyi identified the Individual depicted as himself.

27. Olaniyi further admitted, in sum and substance, that he used a firearm in the commission of the robberies. Olaniyi explained that he robbed the stores because he wanted to make his rent payments and buy food.

28. Olaniyi asserted that he had sold his firearm about two months earlier. His interviewers pointed out that the armed robberies occurred as recently as two weeks earlier, and then took a break from the interview. After the agents returned, Olaniyi refused to continue the interview.

29. I know that all the stores described above sell items, such as certain bottled beverages, originating outside New York State.

7

V.     The DEVICE

30.     On July 2, 2021, a grand jury sitting in the Eastern District of New York returned an indictment of Olaniyi, docketed under Case Number 21-CR-350 (WFK), on four counts of committing Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a); one count of committing attempted Hobbs Act robbery, also in violation of 18 U.S.C. § 1951(a); and five counts of possessing and brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A).  Some of those counts involve the robberies described above.

31.     Phone records associated with the DEVICE show that the subscriber of the T-Mobile account associated with the DEVICE is Individual-1, whose reported name is known to me.  Nonetheless, for the reasons discussed below, there is probable cause to believe that Olaniyi was carrying the DEVICE with him at the times and locations for at least three of the robberies described above.

32.     On June 13, 2021, after committing the three actual or attempted robberies described above, Olaniyi made his confession during a 911 call that 911 records show he placed using the DEVICE.

33.     Based on my training and experience, I know that people generally carry their primary cellular devices on their person throughout the day.  Consistent with that assessment, on June 13, 2021, Olaniyi made the 911 call (and thus had the DEVICE on his person) in the vicinity of Glenmore Avenue and Schenck Avenue in Brooklyn, New York, which is about a three-mile drive from the Olaniyi Premises, where Olaniyi told law enforcement agents that he lived.

34. Moreover, based on my training and experience, I know that individuals generally carry their primary cellular devices on their person as they conduct their business, whether that business be legitimate or criminal in nature.

35. Phone-call records recovered from T-Mobile show that the DEVICE was used to make phone calls around the times of the May 23, 2021; May 29, 2021; and June 3, 2021, robberies described above.

36. With respect to May 23, 2021, the DEVICE completed an 11-second call starting at approximately 9:35 p.m.; a 90-second call starting at approximately 9:36 p.m.; and a 40-second call starting at approximately 10:10 p.m. The DEVICE also unsuccessfully attempted to connect with a call number at approximately 11:05 p.m.

37. With respect to May 29, 2021, the DEVICE completed a one-second call starting at approximately 7:09 p.m. and a 14-second call starting at approximately 8:28 p.m. The DEVICE also unsuccessfully attempted to connect with a call number at approximately 6:54 p.m.

38. With respect to June 3, 2021, the DEVICE completed a 52-second call starting at approximately 5:14 p.m. and a 67-second call starting at approximately 5:17 p.m.

39. Accordingly, it is likely that Olaniyi carried the DEVICE on his person as he committed the robberies and was observed entering in and around the Olaniyi Premises. Historical location-based ESI from the days of the robberies will thus likely corroborate that Olaniyi was in the geographic vicinity of the robbed stores around the times those robberies were committed and of the Olaniyi Premises around the times he left or returned there.

40. In my training and experience, I have learned that T-Mobile is a company that provides cellular communications service to the general public. I also know that providers

of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records."

41. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data provide an approximate general location of the cellular device.

42. Based on my training and experience, I know that for each communication a cellular device makes, T-Mobile can typically determine (1) the cell tower to which the customer connected at the beginning of the communication and (2) the cell tower to which the customer was connected at the end of the communication.   I also know that wireless providers such as T-Mobile typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business to use this information for various business-related purposes.

43. Based on my training and experience, I know that T-Mobile also collects per-call measurement data, to which T-Mobile also refers as the "Real-Time Tool" ("RTT"), "Advanced Timing Data," and/or "Per Call Measurement Data" ("PCMD").  RTT, Advanced Timing Data, and PCMD estimate the approximate distance of the cellular device from a cellular tower based on the speed with which signals travel between the device and the tower.  This

information can be used to estimate an approximate location range that is more precise than typical cell-site data.

## AUTHORIZATION REQUEST

44. Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to Rule 41 and 18 U.S.C. § 2703(c).

45. I further request that the Court direct T-Mobile to disclose to the government any information described in Attachment B that is within the possession, custody, or control of T-Mobile.

46. Because the warrant will be served on T-Mobile, which will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

*/s/ Tyler Miceli*

TYLER MICELI
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to before me through
reliable electronic means on October 28, 2021

*Cheryl L. Pollak*

THE HONORABLE CHERYL L. POLLAK
CHIEF UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK